UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12295-RWZ

AWILDA COTTO

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

March 21, 2017

ZOBEL, S.D.J.

Plaintiff Awilda Cotto appeals from a final decision by the Acting Commissioner of Social Security ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that rejected her application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI").  Plaintiff contends that the ALJ erred by: (1) failing to appropriately consider her nonexertional impairments; (2) failing to adequately consider a nurse practitioner's opinion; (3) misusing the testimony of a vocational expert ("VE"); (4) concluding that her impairments did not meet or equal the musculoskeletal impairments "disorders of the spine" and "major dysfunction(s) of a joint"; and (5) reaching a decision that was not supported by

---

[1]  Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

substantial evidence.

Because I conclude that the ALJ did not commit such errors and his decision was supported by substantial evidence, Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Docket # 18) is DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket # 21) is ALLOWED.

**I.      Background**

Plaintiff filed an application for SSDI and SSI on March 6, 2012, alleging disability due to various physical conditions beginning January 6, 2012.[2] Her claims were first denied on May 3, 2012, and again upon reconsideration later in 2012. Plaintiff filed a request for a hearing before an ALJ, and a hearing was held on November 13, 2013. At the hearing, plaintiff and a VE testified.

**A.      Applicable Statutes and Regulations**

To receive SSDI or SSI benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. 1382c(a)(3)(A).[3] The impairment or impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists

---

[2]     The ALJ's decision says that "[i]n both applications, the claimant alleged disability beginning January 6, 2011." Docket # 15-2, at 14; see also id. at 16 (stating the "alleged onset date" was January 6, 2011. However, the applications in the record show the claimant said she has been unable to work since January 6, 2012. See Docket # 15-5, at 7 & 14; see also Docket # 15-6, at 2.

[3]     Section 423 of Title 42 pertains to disability insurance benefits, while Section 1382 pertains to SSI.

in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).[4]

The ALJ analyzes whether a claimant is disabled by using an established "five-step sequential evaluation process." See 20 C.F.R.§§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, then at step two, the ALJ decides whether the claimant has a "severe" medical impairment or impairments, which means the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, then the ALJ considers, third, whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. If so, then the claimant is considered disabled. If not, then the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is "the most [a claimant] can still do despite [her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then moves to step four and determines whether the claimant's RFC allows her to perform her past relevant work. If the claimant has the RFC to perform her past relevant work, then she is not disabled. If the claimant does not, then the ALJ decides, at step five, whether the claimant can do other work in light of her RFC, age, education, and work experience. If the claimant can, she is not considered disabled; otherwise, she is. "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due

---

[4] The regulations at 20 C.F.R. § 404 et seq. pertain to disability insurance, while the regulations at 20 C.F.R. § 416 et seq. pertain to SSI.

to the significant limitation, the Commissioner then has the burden, at Step 5, of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(f), 404.1560(c)(2), 416.912(f), 416.960(c)(2).

### B.     The Initial Rejection and the ALJ's Decision

In a January 15, 2014, written decision, the ALJ found that plaintiff was not disabled under the Social Security Act. The ALJ first concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. See 42 U.S.C. §§ 416(i) & 423. Then, he structured his decision around the five-step sequential evaluation process. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. Next, at step two, he found that she has a number of severe impairments: degenerative disc disease, disease of the muscle, ligament and fascia, right wrist pain, and obesity. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Nonetheless, he determined at step three that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before moving to step four, the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving standing or walking at least two hours in an eight hour day; sitting with normal breaks, about six hours in an eight hour work day; involving the option to alternate sitting and standing every ten minutes; involving the ability to occasionally climb, balance, stoop, kneel, crouch, or crawl; no climbing of ladders; frequent ability to push and pull with both lower extremities; occasional ability to handle, finger, and feel with right hands; and involving avoidance of moderate exposure to hazards, fumes, odors, dusts, gases, and poor ventilation.

Docket # 15-2, at 18. He explained that although plaintiff "alleges she is unable to work

in any capacity . . . this is not supported by the objective medical evidence of record." Id.  Specifically, he cited claimant's ability to perform a variety of daily activities, including caring for her personal needs, preparing meals, conducting light household chores, grocery shopping, walking, and managing her finances.

At the fourth step, the ALJ concluded that plaintiff was unable to perform past relevant work as a daycare teacher's aide given her RFC.  However, based on the VE's testimony, he found "that, considering [her] age, education, work experience, and residual functioning capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 22.  The VE had testified that plaintiff could perform sedentary occupations such as surveillance system monitor, data examination clerk, call out operator, addressor, and appointment clerk.  Accordingly, the ALJ concluded that plaintiff was not disabled.

**C.    The Appeal**

Plaintiff appealed the ALJ's decision to the Social Security Administration's ("SSA") Appeals Council, which denied review on April 12, 2015.  The ALJ's decision thus became the final decision of the Commissioner.  Plaintiff now seeks reversal of the final determination under 42 U.S.C. §§ 405(g) & 1383(c)(3).

**II.    Standard of Review**

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So

long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).  Questions of law are reviewed de novo.  Seavey, 276 F.3d at 9.

### III.  Discussion

#### A.  Plaintiff's Challenge to the ALJ's Consideration of Her Nonexertional Impairments

Plaintiff first argues that the ALJ failed to properly account for her nonexertional impairments when determining that she was not disabled.  Specifically, she claims that the ALJ did not appropriately consider her mental impairment, obesity, and chronic pain.

##### 1.  Mental Impairment

Plaintiff contends that the ALJ's analysis should have considered that she suffered from depression.  She says that her medical records indicate that she was diagnosed with depression and given antidepressant medication.  In addition, plaintiff points to her testimony at the hearing before the ALJ that she was seeing a counselor for depression.  Because of this evidence, plaintiff argues that the ALJ was required to examine the effect of her mental condition under 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

However, plaintiff failed to provide sufficient evidence of a mental impairment,

wherefore the ALJ did not err by failing to analyze its severity under the pertinent regulations. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. Evidence must come from "acceptable medical sources," which include licensed physicians as well as licensed or certified psychologists. See 20 C.F.R. §§ 404.1513(a), 416.913(a). The regulations also describe the technique used to evaluate "the severity of mental impairments." See 20 C.F.R. §§ 404.1520a, 416.920a.

Here, the evidence plaintiff identifies consists of her own testimony that she had been seeing a counselor for depression based on her doctor's recommendation, Docket # 15-2, at 58–59; two reports by a nurse practitioner that stated plaintiff had depression, Docket # 15-7, at 5, 67;[5] and 2012 records that include a prescription for amitriptyline, which plaintiff says is for depression, Docket # 15-7, at 24, 34.[6] Even had she raised her mental impairment, her evidence did not come from "acceptable medical sources," and is therefore insufficient to establish an impairment under the regulations.[7] See 20 C.F.R. §§ 404.1513(a), 416.913(a); Balaguer v. Astrue, 880 F. Supp. 2d 258, 266 (D. Mass. 2012). ("The Social Security Regulations exclude nurse practitioners from the list of acceptable medical sources and they 'cannot establish the existence of a medically

---

[5] Plaintiff also identifies a report authored by a licensed social worker that says plaintiff had complained of depression and had been referred by the nurse practitioner for depression and chronic pain. See Docket # 15-7, at 68.

[6] These parts of the record indicate only that plaintiff did or would receive a prescription of amitriptyline but do not include the reason therefor.

[7] As discussed in Section III.B, infra, other sources can be used to evaluate the severity of an impairment, see 20 C.F.R. §§ 404.1513(d), 416.913(d). However, evaluating the severity of an impairment is distinct from establishing that an impairment exists.

determinable impairment.'" (quoting SSR–0603p, 2006 WL 2329939, at *2 (Aug. 9, 2006))). Therefore, the ALJ was not required to evaluate the severity of a mental impairment under 20 C.F.R. §§ 404.1520a, 416.920a.

### 2. Chronic Pain

Next, plaintiff argues that the ALJ improperly relied on the Medical-Vocational Guidelines ("the Grid"), 20 C.F.R. Part 404, Subpart P, Appendix 2, to make a finding regarding her disability.[8] She says that the ALJ should have followed a two-step process, as outlined in Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986). At step one, the ALJ must determine whether there is "a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged," Avery, 797 F.2d at 21. Then, the ALJ must consider a range of evidence about the claimant's pain, including the claimant's statements. See id. at 23. I find that the ALJ did appropriately follow the two-step process.

In his decision, the ALJ stated that he was following "a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)." Docket # 15-2, at 18. Once such an impairment has been identified, he "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or

---

[8] Plaintiff also suggests in her memorandum that the ALJ failed to account for her obesity. To the extent that plaintiff makes such an argument, it fails. The ALJ explicitly discussed plaintiff's obesity, stating that "this severe impairment impacts a claimant's ability to perform basic work-related activities. An individual assessment of the claimant supports a finding of obesity, which when considered in combination with her other impairments, produce[s] nonexertional limitations consistent with those previously established." Docket # 15-2, at 17. See also id. at 19–20.

8

functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must make a finding on the credibility of the statements based on a consideration of the entire case record." Id. Following this process, the ALJ first found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." Id. However, he also said that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely plausible to the extent alleged." Id. He explained:

> The claimant alleges she is unable to work in any capacity, but this is not supported by the objective medical evidence of record. The claimant is able to care for her personal needs, prepare meals, and do laundry (Exhibit 5E). She does light household chores, grocery shopping, and she is able to pay her bills and manage her finances (Exhibit 4E, 5E). She watches television, walks for exercise and she socializes with friends and family. I have considered the claimant's impairments and am not persuaded by the claimant's statements concerning her impairments and their impact on the ability to work. I find the degree of limitations to be not supported by the objective medical evidence of record. For these reasons, I find the claimant not fully credible and her subjective symptoms are given limited weight.

Id. at 18-19. Later in the decision, the ALJ noted that plaintiff stopped working because she was laid off and not for medical reasons. Id. at 20.

The ALJ also reviewed the objective medical evidence in the record, which included plaintiff's reports of back, knee, foot, ankle, and right wrist pain. A 2012 lumbar MRI showed degenerative changes, and plaintiff claimed she had undergone back injections, which, according to the ALJ, were not reflected in any of the medical records. The ALJ noted that the knee, foot, and ankle pain had been treated conservatively and that "there are no objective diagnostic tests in the medical evidence of record to further support that [plaintiff's right wrist pain] is a condition, which affects her ability to work." Id. at 19. He added that plaintiff's "right wrist pain limits her to work involving an

occasional ability to handle, finger, and feel with [her] right hand[]." Id.  In addition, the ALJ reviewed the opinion evidence of a nurse practitioner and non-examining physicians.

Plaintiff contends that "[w]hile the ALJ determined that [her] impairment is reasonably expected to cause pain, at step two he discredited her testimony of pain." Docket # 18-1, at 9.  She says that the ALJ failed to identify specific reasons for not believing her, i.e., which testimony was not credible, and what evidence led to that conclusion.  I disagree.

A finding that a claimant is not credible "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant."  Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir.1986) (per curiam).  "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam) (citing Da Rosa, 803 F.2d at 26).

Here, the ALJ identified specific evidence in the record that was inconsistent with plaintiff's allegation that she could not work in any capacity.  See Docket # 15-2, at 18-20.  "While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding."  Teixeira v. Astrue, 755 F. Supp.

2d 340, 347 (D. Mass. 2010). Further, the ALJ considered plaintiff's testimony in relation to the evidence in the record. Together, his findings provide substantial ground to limit the weight of plaintiff's subjective symptoms. See Northrop v. Astrue, No. 10-CV-367-JD, 2011 WL 941587, at *4 (D.N.H. Mar. 18, 2011) ("The ALJ need not discuss every piece of evidence and every factor to provide a sufficiently articulated decision."); cf. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) (per curiam) (holding that "the record did contain substantial evidence for the ALJ's conclusions as to the non-exertional impact of claimant's pain" when the ALJ considered the findings of a consulting internist as well as the ALJ's observations of the claimant, and noting that the "ALJ might also have mentioned that claimant stated on her application for benefits that she did 'all the household chores at my own pace'"); Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990) (per curiam) ("The ALJ stated in his decision that claimant's 'daily activities are practically intact,' and noted 'claimant's activities in taking walks, driving occasionally, and the claimant's demeanor.' We cannot doubt, therefore, that the ALJ gave due consideration to non-medical evidence relating to claimant's pain.").

### B. Plaintiff's Challenge to the ALJ's Consideration of the Nurse Practitioner's Opinion

Plaintiff argues that the ALJ erred in his consideration of the opinion of Cecilia O'Malley, a nurse practitioner who had treated plaintiff. O'Malley completed an undated RFC that indicated that plaintiff was limited to frequent lifting of less than ten pounds and standing and/or walking for less than two hours a day, that plaintiff must periodically alternate sitting and standing to relieve pain or discomfort, and that she was limited in

her upper extremities by limited feeling and fingering abilities. In his decision, the ALJ discussed O'Malley's RFC and "considered this opinion when determining claimant's residual functional capacity, [sic] however, notes that the issue of disability is an issue specifically reserved for the Commissioner (20 C.F.R. 404.1527(e)(2)[)]. Therefore, while it has been considered, it is not entitled to controlling weight." Docket # 15-2, at 20. The ALJ also took account of the state agency medical opinions of the non-examining physicians. He said that the "conclusions reached by these physicians also supported a finding of not disabled; although I find that the claimant is somewhat more limited than she was previously assessed to be." Id. He gave these opinions "significant weight, particularly in the instant case, where there exist consistent medical evidence to reach similar conclusions . . . and where their opinions are not contradicted." Id. After considering all of these opinions as well as plaintiff's statements, the ALJ determined plaintiff's RFC.

Under the regulations, "[r]egardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]." 20 C.F.R. §§ 404.1527(c), 416.927(c). Nurses are considered "'other medical sources' whose opinions an administrative law judge has discretion to assign weight." Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012) (citing 20 C.F.R. § 416.913(d)); see also 20 C.F.R. § 404.1513(d). An ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The regulations also state that opinions on some issues,

12

such as a claimant's RFC, "are not medical opinions. . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(d) & (d)(2), 416.927(d) & (d)(2).  For these issues, the regulations provide that the SSA "will not give any special significance to the source of an opinion."  Id. §§ 404.1527(d)(3), 416.927(d)(3).

Based on these regulations, there was no error in the ALJ's consideration of O'Malley's opinion and the weight he gave it in determining plaintiff's RFC.  As an initial matter, contrary to plaintiff's contention, the ALJ did not "reject Ms. O'Malley's opinion regarding Ms. Cotto's RFC on the sole basis that she was an 'other source,'" Docket # 18-1, at 12.  Rather, he explicitly stated that evidence from "other sources" can be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  Docket # 15-2, at 20.  He then stated that he "considered [O'Malley's] opinion when determining claimant's residual functional capacity," but, consistent with the regulations, did not give the opinion controlling weight, as the regulations specifically reserve this question for the Commissioner.  Id.

Further, the ALJ's reasoning is sufficiently clear from his decision.  In addition to O'Malley's opinion, he relied on the state agency medical opinions, particularly to the extent they were consistent with the other medical evidence in the case.  These opinions suggested that plaintiff could stand and/or walk for about six hours in an eight-hour workday and could occasionally climb, balance, stoop, and kneel.  See, e.g., Docket # 15-3, at 20-23, 31-34. And the RFC the ALJ ultimately determined was based on some — though not all — of the limitations in O'Malley's RFC, including the option to alternate sitting and standing every ten minutes.  I discern no error with the ALJ's decision

regarding plaintiff's RFC.

### C. Plaintiff's Challenge to the ALJ's Use of the Vocational Expert's Testimony

Plaintiff next contends that the ALJ erred in his determination that she could perform sedentary work. She says that "[t]he ALJ inexplicably misstated the testimony by a VE that established [her] inability to perform any work that exists and is substantially available in the national or regional economy, and managed to reach the opposite conclusion from that of the VE that [she] could perform sedentary work." Docket # 18-1, at 13.

At the hearing, the ALJ engaged in an exchange with the VE and asked the VE to assume an individual had the plaintiff's RFC. See Docket # 15-2, at 64–67. He asked whether such an individual could perform plaintiff's past work, to which the VE responded no. In response to a series of hypothetical questions about what jobs in the national and regional economy such an individual could perform, the VE explained that with a limitation of occasional handling and fingering, there would be only one occupation, a surveillance system monitor. With a limitation on only the right hand, the individual could work as a data examination clerk or call out operator. With a limitation on the right hand and the frequent ability to handle, finger, and feel with the left hand, then the individual could also work as an addressor or appointment clerk. Finally, the ALJ asked how having two or more unexecused absences per month would impact the individual's work. The ALJ responded such absenteeism would preclude all work.

The ALJ's determination that work existed that plaintiff could perform given her RFC was consistent with the VE's testimony. This case is thus distinguishable from

those that plaintiff cites in which the ALJ discredits or discounts the VE's testimony. See Padilla v. Barnhart, 186 F. App'x 19, 21 (1st Cir. 2006) (per curiam) ("Because the ALJ discounted and ignored the treating physicians' reports and the corresponding testimony of the vocational expert, his findings are based entirely on the use of the Grid"); Rodriguez v. Astrue, 694 F. Supp. 2d 36, 47 (D. Mass. 2010) ("The ALJ not only failed to analyze the vocational expert's testimony with respect to . . . three hypotheticals — which were fully supported by Dr. Baslet, the state agency psychologists, and the other medical evidence of record — but simply ignored the testimony.")  Here, as discussed, the ALJ did not err in determining plaintiff's RFC, and his questions to the VE were based on this RFC.  See Berrios Lopez, 951 F.2d at 429 ("The ALJ was entitled to credit the vocational expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.").  And so, there was no error in the ALJ's reliance on the VE's testimony.

> **D.  Plaintiff's Challenge to the ALJ's Conclusion that Her Impairments Do Not Meet or Equal "Disorders of the Spine" and "Major Dysfunction of a Joint"**

Plaintiff claims that "the undisputed evidence, combined with the ALJ's own findings, establish that [she] has severe musculoskeletal impairments that meet or equal the listed impairments 'disorders of the spine' . . . and 'major dysfunction of a joint.'" Docket # 18-1, at 14.

Listing 1.04, Disorders of the spine, provides:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, App'x 1 § 1.04.

The ALJ found that plaintiff had, among other severe impairments, degenerative disc disease.  See Docket # 15-2, at 17.  He also noted that she had a lumbar MRI in 2012 that showed degenerative changes.  See id. at 19.  However, in order to meet the listing for "disorders of the spine," as set forth in § 1.04, subpart A, B, or C must also be satisfied.  Plaintiff fails to identify where in the record at least one of these specific criteria is met.[9]

So too for "major dysfunction of a joint."  Listing 1.02, Major dysfunction of a joint(s) (due to any cause), provides:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

---

[9] Plaintiff does identify reports of lower back pain, limited motion, and tenderness. See Docket # 15-7, at 30, 33.  There is also evidence of pain with straight leg raises.  See Docket # 15-7, at 30, 33.  However, there is also an indication that the "SLR" was negative in another part of the record. See id. at 50.  The evidence plaintiff identifies is insufficient to show that she meets all the criteria for subpart A, B, or C.

> ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, App'x 1 § 1.02. While plaintiff points to evidence that she had been experiencing pain, including when walking, as well as limited motion, see, e.g., Docket # 15-7, at 28, 30, 33–34, 48–51, she does not show that she meets the specific criteria of the listing, including having "gross anatomical deformity." Further, Dr. Ricardo Ramirez considered both listings 1.02 and 1.04 and determined that plaintiff was not disabled. See Docket # 15-3, at 20–24. The ALJ properly found that plaintiff did not meet either of these listings.

### E. Plaintiff's Argument that the ALJ's Decision is Not Supported By Substantial Evidence

Finally, plaintiff argues that because the "ALJ ignored evidence, misapplied the law and judged matters entrusted to experts, the decision is not supported by substantial evidence and should be reversed." Docket # 18-1, at 17. However, for the reasons discussed above, the ALJ did not err in these ways and his decision was supported by substantial evidence. See Richardson, 402 U.S. at 401 (explaining that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quoting Consolidated Edison Co., 305 U.S. at 229)).

## IV. Conclusion

Plaintiff's Motion to Reverse or Remand the Decision of Commissioner (Docket # 18) is DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket # 21) is ALLOWED.

Judgment may be entered affirming the decision of the Commissioner.

|  |  |
|---|---|
| March 21, 2017 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |